IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSÉ B. MONTOYO RIVERA<br>    Plaintiff,<br><br>        v.<br><br>PALL LIFE SCIENCES PUERTO RICO, LLC<br>    Defendant. | Civil No. 16-1199 (BJM) |

**OPINION AND ORDER**

José B. Montoyo Rivera ("Montoyo") brings this action against Pall Life Sciences Puerto Rico, LLC ("PLS"), alleging violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; Law 44 of July 2, 1985 ("Law 44"), P.R. Laws Ann. tit. 1, § 501; and Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. Docket No. 40 ("Am. Compl."). PLS moved to dismiss the Article 1802 claim, Docket Nos. 61, 76 ("Mot."), and Montoyo opposed. Docket No. 67 ("Opp."). The parties consented to proceed before a magistrate judge. Docket Nos. 30, 31.

For the reasons set forth below, the motion to dismiss Montoyo's Article 1802 claim is **granted**.

**MOTION TO DISMISS STANDARD**

To survive a Rule 12(b)(6) motion, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). A court must "accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor." *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008). While a complaint need not contain detailed factual allegations to survive dismissal, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citation omitted). The court need not accept as true legal conclusions or "'naked assertions' devoid of 'further factual

enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal alteration omitted); *Maldonado v. Fontanes*, 568 F.3d 263, 267 (1st Cir. 2009). The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible. *Iqbal*, 556 U.S. at 680. The plaintiff must show more than the "sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## BACKGROUND

Montoyo is a 55-year-old handicapped employee who works at PLS. Am. Compl. ¶¶ 7, 11. Since birth, Montoyo has suffered from "congenital malformation and deformity of the bones in his right arm." *Id.* ¶¶ 9, 11. As a result, Montoyo's right arm and shoulder are smaller and weaker than an average one. *Id.* This condition limits Montoyo from engaging in a number of activities and impairs him from "lifting heavy objects" and preforming tasks "involving fast-pace repeated or rotational movements with both his right arm and shoulder." *Id*.

Montoyo has been an employee at PLS since September 1997.[1] *Id.* ¶ 14. When Montoyo started working at PLS's Building No. 2 ("Building No. 2"), he informed the department of human resources of his condition and thus was assigned to work as a materials handler to accommodate his limitations. *Id.* ¶¶ 15–16. Subsequently, in March 2005, Montoyo was reassigned to work in the assembly line due to a workforce reshuffling. *Id.* ¶ 18. Following this reassignment, Montoyo complained of pain and allowed PLS to access his medical records to provide evidence of his condition. *Id.* ¶ 20. This medical evidence allowed Montoyo to be reassigned in May 2006 to the position of materials handler for Building No. 2. *Id.* ¶ 21.

---

[1] Montoyo was initially an employee of Pall Biomedical, Inc. ("PB"), but in 2006 all of PB's assets and employees, including Montoyo, were transferred to PLS.

Montoyo worked at Building No. 2 until November 2014, when PLS sold it to Haemonetics Corp. *Id.* ¶ 25. This sale caused Montoyo to be reassigned to PLS's Building No. 4, to work as a shipping materials handler. *Id.* ¶ 26. This new assignment was too strenuous for Montoyo and so he requested reasonable accommodation from human resources and the plant manager. *Id.* ¶¶ 26–28. Montoyo did not receive a definitive answer to his requests. *Id.*

In February 2015, as a result of performing the same tasks that caused him pain, Montoyo "collapse[d] due to pain in his right shoulder." *Id.* ¶ 28. Montoyo sought treatment from Dr. Milton Rodriguez ("Dr. Rodriguez"), a chiropractor, due to his collapse. *Id.* ¶¶ 29–30. He was also referred by PLS to Dr. Dennise Monserrate ("Dr. Monserrate"), a psychiatrist and physical therapist, for evaluation. *Id.* Dr. Rodriguez concluded that Montoyo could not lift, push, or pull objects weighing over 15 pounds, and could not raise his arm over shoulder level. *Id.* Additionally, Dr. Monserrate determined that Montoyo should be reassigned to a job position that "would be more compatible with his disability." *Id.*

In May 2015, due to PLS's inaction, Montoyo requested treatment from the State Insurance Fund ("SIF"). *Id.* ¶ 34. When Montoyo made PLS's administration aware of his decision, PLS told him that he would be reassigned to the assembly line in Building No. 1 and that his salary and benefits would be reduced. *Id.* ¶ 37. As a result, Montoyo filed a work-related claim with the SIF and claimed problems with both arms, particularly overuse of his left arm. *Id.* ¶ 38. The SIF's physicians determined that Montoyo suffered from "work-related sprains in his right arm and shoulder, as well as a work-related cervical sprain." The SIF recommended that PLS provide Montoyo with a reasonable accommodation. *Id.* ¶¶ 38–39.

Following this action, Montoyo continued receiving treatment from Dr. Rodriguez, who modified one of his recommendations by stating that Montoyo's condition has worsened, that he can only occasionally lift objects weighing less than 10 pounds, that he

cannot lift anything over his head with his right arm, that he cannot perform repetitive right-arm movements, and that he cannot push or pull any object weighing over 10 pounds. *Id.* ¶ 40. Additionally, Montoyo was examined in April 2016 by Dr. Monserrate, and she determined that Montoyo is now suffering from Thoracic Outlet Syndrome.

## DISCUSSION

PLS seeks dismissal of Montoyo's Article 1802 claim on the basis that it is "not cognizable because it arises out of the same facts as [his] claims under the ADA and Law 44." Mot. ¶ 3. Montoyo argues that the First Circuit's decision in *Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R.*, 671 F.3d 49 (1st Cir. 2012), counsels a different result. Opp. 4. Article 1802 of the Puerto Rico Civil Code states that "[a] person who by an act or omission causes damages to another through fault or negligence shall be obliged to repair the damage done." P.R. Laws Ann. tit. 31, § 5141. In regards to claims allowed under Article 1802, the Puerto Rico Supreme Court, and not the federal courts, is the authoritative source of law. *See Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 18 (1st Cir.2012). The Puerto Rico Supreme Court has held that:

> when [a] cause of action arises from a contractual or any other type of relationship, Puerto Rico Civil Code sec. 1802 constitutes a general source of law on the basis of which emotional distress damages may be claimed, as long as . . . there is no applicable special law--such as a labor law--that may prohibit or limit such a claim.

*Pagan-Renta v. Walgreens*, 190 D.P.R. 251, P.R. Offic. Trans. (2014).

The purpose of Law 44 is to protect employees from discrimination based on a disability. P.R. Laws Ann. tit. 1, § 502. All the remedies under "Law 100," P.R. Laws Ann. tit. 29, § 146, are the same as the remedies available to an employee claiming discrimination under Law 44. P.R. Laws Ann. tit. 1, § 511. In *Garcia Pagan v. Shiley Caribbean, etc.*, 22 P.R. Offic. Trans. 183 (1988), the plaintiff sought "pecuniary, bodily

and mental damages" through Law 100. The *Garcia Pagan* court explained that originally the Puerto Rico Civil Rights Act, P.R. Laws Ann. tit. 1 §§ 13–19, provided only for criminal liability. *Id.* at 190. But this changed when the Puerto Rico Supreme Court's decision in *Muriel v. Suazo*, 72 D.P.R. 370 (1951), opened the doors to civil actions for discrimination under Article 1802. *Id.* at 191.

Subsequently, the Puerto Rico Civils Rights Act was amended to incorporate the holding in *Muriel.* Additionally, another amendment was proposed to extend the Civil Rights Act's remedies "to cases of discrimination in employment[,]" but it failed because "[t]he legislative history indicate[d] that the lawmakers understood that the recently approved Act No. 100 of 1959 established *equally ample* remedies to avoid discrimination in employment and to compensate the aggrieved parties." *Garcia Pagan*, 22 P.R. Offic. Trans. at 191-92. The *Garcia Pagan* court reasoned that the legislature "acknowledge[d] that the remedy provided by [Law 100] was going to have the same scope as the one allowed in [*Muriel*]." *Id.* at 198.

Having examined the legislative history, the Puerto Rico Supreme Court reiterated "the existence in Puerto Rico of a cause of action for damages based on discrimination in employment, especially recognized through Act No. 100" and reaffirmed the holding in *Muriel* and *Olmo v. Young & Rubicam of P.R., Inc.*, 10 P.R. Offic. Trans. 965 (1981). The Puerto Rico Supreme Court also expressly stated "that the Legislative Assembly approved a remedial scheme with all the necessary means to redress the victims for the damage suffered as a result of discrimination in employment." *Garcia Pagan*, 22 P.R. Offic. Trans. at 200.

Similarly, Chief Justice Hernandez Denton set forth in his concurring opinion in *Santini Rivera v. Serv. Air., Inc.*, 37 P.R Offic. Trans. 1, (1994) the holding of *Porto & Siruano v. Bentley P.R., Inc.*, 132 D.P.R. 331, 342, 32 P.R. Offic. Trans.__ (1992): "[a]s a

general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under sec. 1802." (internal alteration omitted). After noting Chief Justice Hernandez Denton's concurrence, the *Pagan-Renta* court expressly concluded "that when this Court has construed a special labor or labor-management law in the context of the remedy sought, it has been consistent in construing the statute restrictively. That is, we have refused to accept the thesis that the lawmaker left the door open to any other relief or cause of action provided by a general statute." *Pagan-Renta*, 190 D.P.R. 251, P.R. Offic. Trans. (2014) (emphasis in original omitted).

The weight of authority in this district is consistent with Puerto Rico Supreme Court precedent, holding that an Article 1802 claim cannot be litigated concurrently with a specialized labor law, such as the FMLA or Laws 44 and 80, when both claims arise from the same tortious conduct. *See Aguirre v. Mayaguez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 357 (D.P.R. 2014); *Velez-Sepulveda v. GlaxoSmithKline P.R., Inc.*, No.13-1909, 2015 WL 4389529, *8 (D.P.R. July 15, 2015). These decision are in accord with *Garcia Pagan* and *Pagan-Renta*. To be sure, an earlier decision in this district determined that an Article 1802 claim could be litigated concurrently with Laws 100 and 69. *Pagan-Alejandro v. P.R. ACDelco Serv. Ctr., Inc.*, 468 F. Supp. 2d 316, 330 (D.P.R. 2006). But the presiding judge in *Pagan-Alejandro* later decided to follow the view of the majority of courts in this district in *Medina v. Adecco*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008).

In this case, all claims presented by Montoyo arise from a contractual employee-employer relationship, which places this case squarely with the rule placed in *Pagan Renta*. And Law 44 is the type of specialized labor law to which the Puerto Rico Supreme Court refers to in *Pagan-Renta*. Since the remedies allowed by Law 100 and 44 are the same, P.R. Laws Ann. tit. 1, § 511, Montoyo may not bring an Article 1802 claim concurrently

with a Law 44 claim because Law 44 provides all of the remedies available for discrimination in employment by reason of a disability and because he does not suggest that his 1802 claim alleged tortious conduct distinct from that which underlies his Law 44 claim.

To be sure, Montoyo cites *Muñoz* to suggest that it counsels a different result. In *Muñoz*, the district court allowed the plaintiff to bring both an ADEA claim and an Article 1802 claim. The First Circuit determined that this decision "did not qualify for plain error." *Muñoz*, 617 F.3d at 60. The plain error rule allows an appellate court to "notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation [of the] judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160 (1936). The court in *Muñoz* determined that the district court's decision was not plainly erroneous because of four specific reasons: (1) the case defendants cited on appeal—*Rosario v. Valdes*, No. CIV. 07-1508CCC, 2008 WL 509204 (D.P.R. Feb. 21, 2008), which held that an Article 1802 claim could not be litigated concurrently with Laws 17, 80, 100 and 69—was obscure; (2) neither party raised the issue at trial; (3) there was little jurisprudence on the issue at the time of trial; and (4) the appellant's affirmative conduct at trial suggested an Article 1802 claim was indeed available. *See Muñoz*, 671 F.3d at 60.

In contrast, the four factors on which the court in *Muñoz* grounded its determination are not present in this case. Indeed, the issue has been raised by PLS and not waived, and PLS has not suggested that Montoyo has a cognizable Article 1802 claim. *See Velez-Sepulveda*, 2015 WL 4389529, at *7; *Aguirre*, 59 F. Supp. 3d at 357. And importantly, *Pagan Renta*—which clarified much of the Puerto Rico law at issue here—was decided

after *Muñoz*. *See Velez-Sepulveda*, 2015 WL 4389529, at *7 n.17 ("Any doubts raised by *Muñoz* have been settled by the Supreme Court's recent decision in *Pagán Colón*").

Thus, PLS's motion to dismiss Montoyo's Article 1802 claim for failure to state a claim is **granted**.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Article 1802 claim is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of February, 2017.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge